## THE TRENTON WATER POWER COMPANY *v.* ROBERT CHAMBERS.

One who had waived his right to have commissioners called, and permitted a corporation to take possession of his land without first making compensation, or pursuing the mode prescribed by the act to ascertain it, and permitted them to change the character of the property, expend large sums of money upon it, and constitute it a part of an extensive and valuable public improvement, cannot recover the possession of the land upon paying for the improvements. The only relief the court will afford, is to give him compensation for his land, and remuneration for all damages; and this may be ascertained either by reference to a master or the intervention of a jury.

*C. S. Green* and *W. L. Dayton*, for complainants.

*M. Beasley*, for defendant.

THE CHANCELLOR. "The Trenton Delaware Falls Company" was incorporated on the 16th of February, 1831. The company was authorized to erect a wing dam on the Delaware river, between the mouth of the Assanpink and the head of Wells' Falls, and a raceway in, along, and near the bank of said river, in the neighborhood of Trenton, and to construct and make all such embankments, reservoirs, aqueducts, weirs, gates, and other works, as the managers of said company might deem convenient and necessary for the purposes aforesaid. The act prescribes the mode by which the company is to acquire the title to the land necessary for the works. Robert Chambers, the defendant, was the owner of a tract of land south of the Assanpink, and his brother, Reeder, of a tract in the same vicinity. The route of the main raceway, branches, and improvements have been completed at a very heavy cost. The works are of great public importance. A large number of factories and mills have been erected, depending for their maintenance upon this public improvement. The route of the raceway

was located according to law, and occupied a portion of the said lands of the defendant and his brother. In the construction of the works over the land of the defendant, a deviation was made in the route filed, by extending the east line of the raceway in such a manner as to make a reservoir upon the defendant's land.

In the year 1840, " The Trenton Delaware Falls Company " were decreed by the Court of Chancery to be insolvent, and the property and franchises of the company were sold by receivers appointed for the purpose. By virtue of an act of the legislature subsequently passed, the purchasers were authorized to hold the real estate, works, and franchises so purchased, in the same manner that the original stockholders held the same ; and, by the said act, it was also enacted that the said company should thereafter be known as " The Trenton Water Power Company." Under this name the company have since enjoyed the works, and have expended large sums of money in their maintenance and further improvement. Since then the defendant has commenced two suits against the complainants, each of them in a plea of trespass on the case, and has declared against them for damages for the erection and construction of the said raceway by " The Trenton Delaware Falls Company," over and across his said lands, and for the continuing and maintenance of the said raceway by the complainants, and for causing the water drawn from the river Delaware, by means of the dams and works of the complainants, to flow through the said raceway over and across his said land.

Since the complainants have been in the possession of their works, the defendant has purchased of the heirs of his brother, now deceased, the other land mentioned, over which the raceway was constructed, and to recover the possession of this land, has brought an action of ejectment.

The facts I have mentioned are admitted by the pleadings. The rights of the complainants under their purchase, or the validity of the acts of the legislature by which they were acquired and were confirmed, are not questioned by the pleadings, and were not controverted on the argument.

The bill alleges, in substance, that "The Trenton Delaware Falls Company," after expending a large amount of money, became embarrassed for want of funds necessary to pay for the lands required to complete their works; that the defendant was a large stockholder and anxious for their completion; that they applied to him for permission to occupy his lands and construct their works thereon, deferring compensation to a future day, and that he consented; it charges that the work was done within sight of his residence, and went on, from day to day, without any objection from him; it charges that if the defendant be permitted to obtain possession of the said lands, it will be in his power to obstruct the race-way, or draw off the water for the same, and thereby utterly destroy the value of the race-way, works and improvements, and also to stop the mill and manufactories now erected, to the irreparable injury and utter ruin of the complainants, and that he will refuse to sell the lands to them upon any terms.

The defendant admits that he had a conversation with individuals named in the bill, about the company's taking his land; he says he did not consent, but does not say he positively refused; he does not deny that the race-way was commenced on his land, and its construction continued from day to day, with his knowledge and without his objecting, but says he did not know it was so constructed as to make a reservoir until the water was let into the race-way; he does not deny that it is his intention to draw off the water, and do the complainants all the injury they apprehend, but says the injury is not irreparable, because they can acquire the title to the land for the race-way in the mode prescribed in their charter.

The complainants have proved that the defendant did give his consent for the construction of their works upon his land, and to wait to a future day for compensation, and that when he gave such consent he knew of the deviation in the line of the route.

The question is, can this court grant the complainants any, and if so, what relief? They are without remedy at

law, and if this court can afford them no protection, then this important public work is at the mercy of the defendant, unless, as the defendant sets up in his answer, the complainants can proceed and acquire the title to the land in the manner prescribed by the act of incorporation of " The Trenton Delaware Falls Company." But there are serious legal difficulties in the way of the complainants proceeding under the act. These difficulties the counsel of the defendant did not deny to exist. If this court should now dismiss the bill on this ground, and a court of law should determine that the complainants cannot acquire title in the mode prescribed by the act, serious and irreparable mischief might ensue before the complainants could again avail themselves of the protection of this court. I do not feel at liberty to deny the complainants the protection of the court on this ground.

Can the court protect the complainants ? The defendant defends himself under his title, and he insists that although he did consent that the complainants might take the land upon the terms alleged, yet it was a parol contract by which the complainants could acquire no title or interest in land ; if a license, it was one revocable in its character, and he has revoked it.

I shall not stop to reconcile the numerous authorities upon the doctrine of license, to ascertain as to what extent they are revocable, or what peculiar relief a court of equity will afford in mitigating the rigor of the common law. Nor will I trouble myself in determining whether relief can be granted in this case under the head of specific performance. The case has its peculiarities, and I shall endeavor to determine it upon principles, right between man and man, such as commend themselves to our common sense and common honesty. If this can be done without violating any established rules of law or equity, it is better than to resort to any technical rules in bringing the case under any specific head of equity jurisdiction.

By law, " The Trenton Delaware Falls Company " had the right and power to take the defendant's land for the pur-

poses of their works, the defendant had no option about the matter, so far as to whether the company should or should not have the land.   All he could require was that the company, in obtaining the possession, should pursue the mode prescribed by their act of incorporation, in case a mutual agreement could not be made between them.   In such case, commissioners were to be appointed, and upon their appraisement being made, and filed in the office of the secretary of state, and payment of the sum awarded to the land owner, the company had the right to enter upon and occupy the land. In this instance the defendant waived his right to this mode of procedure and consented that the company might take possession of his land, without first making compensation or pursuing the mode prescribed by the statute to ascertain it. The only question between the parties was, as to the amount of compensation, not as to the right of the company's having the land.

The defendant delivered to the company the possession of the land, in order that they might change the character of the property, expend large sums of money upon it, and constitute it a part of an extensive and valuable public improvement.   He was interested as a stockholder in the success of the company's undertaking.   The company completed their work, and third persons have made large investments depending upon its maintenance.   The defendant is now taking advantage of his position, and has taken steps which will put in jeopardy and destroy, not the complainants only, but the large interests depending upon them for success.   The complainants appeal to this court for protection.

In an ordinary case the court would have no difficulty. As between individuals, if the court could not order a specific performance, it might permit the defendant to take his land, upon paying for the improvements which he had induced to be made.   *Parkhurst* v. *Van Cortlandt*, 1 *J. C. R.* 287.

The court cannot do that in this case.   There is only one way to relieve the parties and that is to give the defendant compensation for his land, and remuneration for all damages. This court is perfectly competent to do this, and I do not

see any good reason why it should not afford such relief in this way. The defendant is entitled to nothing more, and it is unjust and against good conscience that he should be permitted, after having induced the expenditure of a large sum of money, to do that which can be of no benefit to himself, but irreparably injure others.

The counsel for the defendants insisted very strongly that if the court should determine that the complainants could hold any of the land in question, upon making compensation, they should be confined within the limits of their survey, filed in the office of the secretary of state.

This provision was made, in part, and, perhaps, mostly for the benefit of the landholder, and he has a right, as far as he is interested, to waive its requirements. If the defendant had given the company a deed for this land he could not object to their using it, because it is not all included in their survey. Having given his consent for its occupation and use, the fact of there being no survey is no injury to him, and he cannot take advantage of it.

The question remains as to the mode of ascertaining the amount of compensation. The usual course is by reference to a master, but I have no difficulty in giving the defendant a jury, if he desires it. The statute provides, that if any matter of fact shall render the intervention of a jury necessary, then the Court of Chancery is authorized to direct an issue for the trial of the same in the Supreme Court. The facts, as to what is the value of the land in controversy, and what damages the defendant is entitled to, are questions peculiarly proper for that tribunal. They are necessarily matters depending upon the opinion of witnesses. A jury is the best tribunal to reconcile conflicting opinions, and put a proper estimate on their value, and it is the most satisfactory tribunal to parties.

I have more difficulty as to the land which the defendant purchased of the heirs of his brother. The question as to it, is presented in a very unsatisfactory manner by the pleadings. The bill alleges that the defendant has, since the completion of the said race-way, and since the complainants have be-

come the owners, purchased other lands of the heirs of his brother, by whose consent and permission the race-way was constructed over the same. The defendant admits, in his answer, the purchase of other lands, not of his brother, but of John H. Chambers and Francis P. Chambers, and avers that the land was taken possession of without their consent. It turns out, in evidence, that John H. Chambers, Francis P. Chambers, and one Mary Ann Chambers, are the heirs-at-law of Reeder Chambers, who is dead. It is proved that Reeder Chambers died in the early part of the winter of 1831, so that the race-way could not have been made during his lifetime. There is no evidence as to whether these lands were occupied with the permission of any one.

This part of the case must be further examined, and I will hear the suggestion of counsel in reference to it.

CITED in *North Hud. Co. R. R.* v. *Booraem,* 12 *C. E. Gr.* 456.